UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DIAMOND BOONE et al., Plaintiffs, v. ATHENA HEALTH CARE ASSOCIATES, INC., et al., Defendants. | ) | Civil No. 25-13994-LTS |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 27)

November 18, 2026

SOROKIN, J.

Diamond Boone, her husband Burton Boone, III, and their daughter Baby Doe Boone, now representing themselves, bring this action against Diamond's former employer Athena Health Care Associates, Inc., and various Athena employees, alleging claims arising out of Defendants' termination of Diamond's employment.[1] Doc. No. 1.[2] Defendants move to dismiss the complaint. Doc. No. 27. For the reasons explained in this Memorandum and Order, Defendants' motion is ALLOWED in part and DENIED in part.

[1] Ordinarily, the Court refers to litigants by their last names. Because the three plaintiffs here have the same last name, the Court uses their first names for clarity.
[2] Citations to "Doc. No. __" reference items filed on the electronic docket ("ECF") in the action that is the subject of this Order; pincites are to the page numbers in the ECF header or, where applicable, to the paragraph numbering within the document.

## I. BACKGROUND[3]

Athena is a company that operates health care facilities in Connecticut, Massachusetts, and Rhode Island. Doc. No. 1 ¶ 14. The facilities operate on properties that Athena leases from real-estate holding companies owned by Lawrence Santilli, Athena's former CEO. Id. ¶¶ 5, 15.

On February 16, 2021, Athena hired Diamond as a regional specialist of therapeutic recreation services. Id. ¶ 19. Diamond enrolled in a family health care plan offered by Athena to its employees. Id. ¶ 24. Pursuant to this election, Athena withdrew approximately $1,200 per month from Diamond's paychecks. Id. ¶ 26. At the time, Diamond was unaware that Santilli used Athena employees' contributions—including Diamond's—to pay Athena's landlords, which were real-estate holding companies he owned, rather than to purchase insurance. Id. ¶¶ 27–30. Santilli allegedly "underfund[ed] the [Athena] employee health care pool, then, after failing to pay the health care providers for a certain number of months, require[d] the [health care] provider to resubmit the bill and recommence the payment process from the beginning." Id. ¶ 65; see also Doc. No. 1-6 (complaint in separate action against Athena alleging same conspiracy).

In her role as a regional specialist of therapeutic recreation services, Diamond oversaw recreational programs at various Athena facilities in Massachusetts. Doc. No. 1 ¶ 32. After working at Athena for approximately one year, Santilli promoted Diamond to Regional Director of Therapeutic Recreation Services in Massachusetts and Rhode Island. Id. ¶¶ 43–46. Santilli

[3] The Court takes the following facts from the complaint, Doc. No. 1, accepting all well-pleaded facts and drawing all reasonable inferences in Plaintiffs' favor, as it must on a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Exhibits attached to Plaintiffs' complaint are considered part of the complaint. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed. R. Civ. P. 10(c).

later stepped down as CEO, and his daughter, Krista Santilli Grace ("Grace"), assumed day-to-day control of Athena. Id. ¶¶ 55–57.

In August of 2024, Diamond became pregnant with her fourth child, Baby Doe Boone. Id. ¶ 61. Diamond informed her direct supervisors of her pregnancy on October 1, 2024. Id. ¶ 71. Specifically, Diamond emailed Grace, as well as Mark Nugent, the licensed nursing administrator for Massachusetts and Rhode Island, and Dennis Billings, the regional director of operations for Massachusetts and Rhode Island. Id. Diamond indicated that she needed to leave work early the next day to attend an OBGYN appointment and asked "what [she] need[ed] to provide for FMLA purposes," referencing the Family and Medical Leave Act. Id. In response, Grace connected Diamond with Athena's "FMLA and Leave Expert," id. ¶ 79, who in turn sent Diamond an FMLA medical certification form "for [Diamond's] doctor to fill out and send back to [Athena] to approve an intermittent FMLA through the company." Id. ¶ 85. The next day, Diamond visited her OBGYN in New Hampshire. Id. ¶ 89.

On October 13, 2024, Diamond visited her OBGYN again—this time to get approval for FMLA leave. Id. ¶ 99. Diamond was unaware that her absence from work to attend the OBGYN appointment constituted "intermittent leave" under the FMLA, so she asked her doctor to sign the medical certification form for the purposes of obtaining "maternity leave." Id. ¶ 113. Her doctor declined to sign the form because it was too early in Diamond's pregnancy. Id. ¶ 114. Approximately two weeks later, Athena's FMLA expert emailed Diamond, copying Grace, to ask if Diamond had completed the medical certification form. Id. ¶ 115. Diamond responded that her OBGYN would "sign[] that paperwork closer to when [Diamond would] go on Maternity Leave in April 2025." Id. ¶ 116.

On November 11, 2024, Nugent and Billings met with Diamond via Zoom. Id. ¶ 126. Nugent informed her that Athena was "getting rid" of Diamond's position and was consolidating her position with others into a single regional director role. Id. ¶ 127. Diamond was eligible to apply for the new position, but her termination was "effective immediately." Id. ¶¶ 128–129. Approximately forty-five minutes after being terminated, Diamond received notice that her FMLA-leave request had been denied. Id. ¶ 132. According to the notice, the reason for denial was that Diamond's "med cert [was] never submitted by [the] due date." Doc. No. 1-7 at 2.

The next day, Stu Rosenberg, Athena's Chief Administrator Officer, called Diamond. Doc. No. 1 ¶¶ 7, 140. He informed her that she was one of two candidates for the new regional-director job, and that if she was not ultimately chosen for the position, "there could be another job in the Athena corporate structure for her." Id. ¶¶ 140–141. Approximately one week later, Rosenberg again spoke with Diamond on the phone. Id. ¶ 149. He informed her that her termination should not have been effective immediately and she should have been attending work the past week. Id. He directed her to return to work until the new position was filled. Id. Diamond returned to work the next day. Id. ¶ 152.

In December of 2024, Rosenberg and Nugent informed Diamond that she did not get the job. Id. ¶ 153. Nugent later offered her an alternative position with a sixty-six percent pay decrease from Diamond's prior role. Id. ¶ 159. Diamond declined the offer. Id. ¶ 160. Shortly thereafter, Rosenberg emailed Diamond a draft "Release and Separation Agreement," which provided, among other things, that Diamond would waive all FMLA claims. Id. ¶¶ 160–163. Diamond informed Rosenberg that she would not sign the agreement. Id. ¶ 165.

On January 29, 2025, Diamond received a medical bill of $16,975 for the 2023 birth of the third child—not her fourth child, Baby Doe Boone, with whom she was then pregnant. Id.

¶ 169. This was the second medical bill she received for her third child's birth; Diamond had received the first bill in 2023 and referred it to Athena's employee benefits department, but no one had paid it. Id. ¶ 52.

Approximately two months later, on March 18, 2025, Diamond filed a complaint against Athena, Grace, Nugent, Billings, and Rosenberg with the Massachusetts Commission Against Discrimination ("MCAD"), alleging sex discrimination arising from her termination in violation of federal and Massachusetts law and infliction of emotional distress. See Doc. No. 28-1 at 3, 38.

On April 11, 2025, Diamond gave birth to Baby Doe Boone. Doc. No. 1 ¶ 172. Due to her termination from Athena, Diamond did not have health insurance at the time of the birth. Id. ¶ 182. Baby Boone was born with congenital heart failure, and she remained in intensive care for a week. Id. ¶¶ 184–192. The resulting medical bill exceeded $75,000. Id. ¶ 193. Following the birth of Baby Boone, Diamond suffered from post-partum depression. Id. ¶¶ 201–203. On May 30, 2025, Diamond requested permission to withdraw her MCAD complaint, Doc. No. 28-3, and the MCAD dismissed the case on July 13, 2025. Doc. No. 28-4.

In December of 2025, Plaintiffs filed the present complaint. Doc. No. 1. They bring eight claims against Defendants: (1) violation of the FMLA (Count I),[4] Doc. No. 1 ¶¶ 206–217; (2) unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 (Count II), id. ¶¶ 218–227; (3) violation of the Employee Retirement Income Security Act of 1974 ("ERISA") (Count III), id. ¶¶ 228–230; (4) sex discrimination in violation of the Massachusetts Fair Employment Practices Act ("FEPA") (Count IV), id. ¶¶ 231–251;

[4] Because the numbering of the claims in the complaint is out of order, see, e.g., Doc. No. 1 at 47–48 (proceeding from "Count IV" to "Count XII"), the Court renames the counts pursuant to the numbering listed here.

(5) violation of the Massachusetts Paid Family and Medical Leave Act ("PFMLA") (Count V), id. ¶¶ 252–261; (6) intentional and/or reckless infliction of emotional distress (Count VI), id. ¶¶ 262–270; (7) loss of consortium (Count VII), id. ¶¶ 271–273; and (8) prenatal injury caused to Baby Boone (Count VIII), id. ¶¶ 274–277.[5]

Defendants move to dismiss all of the claims for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Doc. Nos. 27, 28. They also move to dismiss for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), contending that Burton and Baby Boone lack standing to bring certain claims. See, e.g., Doc. No. 28 at 6–7 (challenging standing as to Count I). In their response to the motion to dismiss, Plaintiffs concede as much, clarifying that only Diamond asserts Counts I–V, both Diamond and Burton assert Count VI, only Burton asserts Count VII, and only Baby Boone asserts Count VIII. Doc. No. 41 at 1–2. The Court accepts these concessions, which resolve the jurisdictional challenges. Thus, that much of the motion to dismiss, Doc. No. 27, is DENIED AS MOOT. The Court can therefore proceed to analyze Defendants' contention that Plaintiffs have failed to state a claim.[6] Fed. R. Civ. P. 12(b)(6).

---

[5] The complaint names the following defendants: Athena, Santilli, Grace, Nugent, Billings, and Rosenberg. Doc. No. 1 at 1. Plaintiffs fail to clearly specify which claims are asserted against which defendants. As to the FMLA, FEPA, and PFMLA claims (Counts I, IV, and V), the complaint names all the defendants except for Santilli. See Doc. No. 1 ¶¶ 206–217, 231–251, 252–261. To the extent those claims are brought against Santilli, they are DISMISSED. Santilli stepped down as CEO in March of 2024, id. ¶ 55, before the alleged violations occurred. Though the complaint alleges Santilli "continued to maintain operational control of Athena through his daughter" after stepping down, id. ¶ 56, it does not otherwise describe Santilli's involvement with any specificity. It accordingly fails to state those claims against Santilli. The ERISA claim (Count III) is brought only against Santilli. See Doc. No. 41 at 11. The Court assumes that the remaining claims (Counts II, VI, VII, and VIII) are brought against all the defendants.

[6] Defendants also seek to strike Plaintiffs' response to the motion to dismiss, Doc. No. 41, because Plaintiffs filed the response at 11:54 p.m. on the deadline date rather than prior to 6:00 p.m. as provided by Local Rule 5.4(d). Doc. No. 46 at 1. This request is at best borderline

## II. LEGAL STANDARD

Rule 12(b)(6) requires the Court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conversely, "[d]ismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation modified). Pleadings filed by parties representing themselves are "liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation modified); accord Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75–76 (1st Cir. 2014). But this principle "does not relieve a pro se litigant of the requirement to plead basic facts sufficient to state a claim." Theroux v. Mici, 774 F. Supp. 3d 266, 272–73 (D. Mass. 2025) (citing Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980)).

## III. DISCUSSION

Defendants move to dismiss all of Plaintiffs' claims. The Court discusses each claim in turn.

### A. FMLA (Count I)

Diamond brings an FMLA claim against Athena, Grace, Nugent, Billings, and Rosenberg. Though Diamond cites the incorrect statute in Count I, see Doc. No. 1 at 39 (citing 28 U.S.C. § 1331), Defendants understand that this citation was a scrivener's error and put forth arguments contending Diamond fails to state a claim under the FMLA, 29 U.S.C. § 2615. See

---

frivolous, as Plaintiffs' late filing in this case has caused no prejudice whatsoever to Defendants. Thus, Defendants' request to strike Plaintiffs' response is DENIED.

Doc. No. 28 at 6–14. The Court likewise addresses the claim as arising under the proper statute, 29 U.S.C. § 2615.

The FMLA provides that "eligible employee[s]" are entitled to up to twelve weeks of leave from employment for a variety of reasons, including for "the birth of a son or daughter" and "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1). Leave for a serious health condition "may be taken intermittently . . . when medically necessary." Id. § 2612(b)(1). "Upon an employee's return, her employer must reinstate her to the same or an equivalent position, without any loss of accrued seniority." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014). An employee whose right to leave was violated may sue her employer under a theory of (1) interference, in which she claims that her employer "interfere[d] with, restrain[ed], or den[ied] the exercise of" her right to leave, 29 U.S.C. § 2615(a)(1); or (2) retaliation, in which she claims that her employer "discharge[d] or in any other manner discriminate[d]" against her because she exercised her right to leave, id. § 2615(a)(2).

Though the complaint does not specify whether Diamond is bringing an interference or retaliation claim and Diamond argues she advances both theories, see Doc. No. 47 at 2, the Court determines that she alleges a claim only for retaliation.[7] "[W]hether a claim is characterized as 'interference' or not, its elements actually differ depending on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those

[7] The complaint cites the portion of the FMLA that prohibits interference with FMLA rights. Doc. No. 1 ¶ 213 (citing 29 U.S.C. § 2615(a)(1)). Plaintiffs acknowledge that their complaint contains numerous scrivener's errors and assert that they are bringing both an interference and a retaliation claim. See Doc. No. 41 at 1, 7–10.

rights." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 331–32 (1st Cir. 2005). Ultimately, Diamond claims that Athena, Grace, Nugent, Billings, and Rosenberg retaliated against her for exercising her right to FMLA leave. The complaint alleges that in October of 2024, Diamond notified her employer that she was pregnant, requested to take leave to attend an OBGYN appointment, and asked "what [she] need[ed] to provide for FMLA purposes." Doc. No. 1 ¶ 71. She later stated that she intended to go on maternity leave in April of 2025. Id. ¶ 116. In November of 2024, Diamond was terminated and notified that her leave request was denied. Id. ¶¶ 126–132. She was subsequently un-terminated and, a month later, terminated once more. Id. ¶¶ 149–153, 160. These facts, accepted as true, form the basis of a retaliation claim, but not an interference claim.[8] See Chacon v. Brigham & Women's Hosp., 99 F. Supp. 3d 207, 214 (D. Mass. 2015) ("[A]n employer who terminates an employee for exercising or attempting to exercise her FMLA rights has committed a retaliatory act of interference that must be evaluated under the retaliation framework.").

Defendants put forth several arguments why Diamond's FMLA claim must be dismissed. First, Defendants contend that the complaint fails to plausibly allege Diamond is an "eligible employee" under the FMLA because it does not name Diamond's "direct employer"—Worcester MA SNF, LLC. Doc. No. 28 at 8–9. The complaint alleges that Diamond oversaw multiple

[8] A plaintiff may also bring an interference claim based on her employer's failure to comply with the FMLA's notice provisions, which "require employers to provide notice to their employees regarding their FMLA rights at various times." Favreau v. Liberty Mut., Inc., 451 F. Supp. 3d 150, 165 (D. Mass. 2020). Nevertheless, "an employee can only recover for technical violations of the notice requirement if [she] shows that the lack of notice caused some prejudice." Id. at 166 (citation modified). Though the complaint alleges that Diamond did not receive notice of her right to intermittent leave, Doc. No. 1 ¶¶ 41, 74–88, it fails to claim prejudice. The complaint nowhere alleges that Diamond was denied the ability to take leave to attend OBGYN appointments or that she would have sought additional time had she been aware of her right to intermittent leave. Thus, the allegations do not support a claim for interference.

facilities owned by Athena, including "Worcester Rehabilitation & Health Care Center." Doc. No. 1 ¶ 32. While Diamond alleges that she was employed by Athena, see id. ¶ 10, other allegations indicate that at the time of the alleged retaliation, the Worcester facility may have been her "direct employer" as Defendants contend, see, e.g., Doc. No. 1-8 at 2 (Release and Separation Agreement naming "Worcester Rehabilitation & Health Care Center" as the relevant "Facility").

Nevertheless, Athena is a proper defendant to Diamond's FMLA claim. "A corporation is a single employer rather than its separate establishments or divisions." Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 4 (1st Cir. 2006) (quoting 29 C.F.R. § 825.104(c)). To determine whether an entity falls under one "integrated" employer, courts consider the presence of (i) common management; (ii) interrelation between operations; (iii) centralized control of labor relations; and (iv) common ownership. Id. (quoting 29 C.F.R. § 825.104(c)(1), (2)). Accepting the facts alleged in the complaint as true, Athena and its Worcester facility are one "integrated" employer. Diamond was promoted, managed, and terminated by Athena employees and officers. See, e.g., Doc. No. 1 ¶¶ 44, 57, 160. Athena handled and ultimately denied Diamond's FMLA-leave request. See Doc. No. 1-7. Diamond oversaw and worked at various Athena facilities—not just Worcester—indicating that the facilities' operations are interrelated. Doc. No. 1 ¶¶ 32, 70–71. Finally, the complaint describes the Worcester facility as an "Athena facilit[y]," suggesting that Athena owns it. Id. ¶ 32. Coupled with the allegation that Athena employed Diamond, id. ¶ 10, for purposes of the pending motion, Athena is both a proper defendant and Diamond's employer under the FMLA.

Furthermore, the complaint sufficiently alleges that Diamond was eligible for FMLA protection as Athena's employee. To be eligible for FMLA leave, an employee must have "been

employed . . . (i) for at least 12 months by the employer . . . and (ii) for at least 1,250 hours of service . . . during the previous 12-month period." 29 U.S.C. § 2611(2)(A). She also must not work for an employer that—or at a worksite at which the employer—employs less than fifty people. Id. § 2611(2)(B)(ii), (4)(A)(i). The complaint alleges facts that satisfy these requirements. See Doc. No. 1 ¶ 72 (alleging that at time of violation, Diamond had worked for Athena for over twelve months and 1,250 hours of service); id. ¶¶ 16, 32–34 (alleging that Athena has approximately 2,500 employees and that Diamond worked at various facilities across Massachusetts and Rhode Island).

Second, Defendants contend that Diamond's pregnancy does not constitute a "serious health condition" entitling her to intermittent FMLA leave. This is not dispositive as to Diamond's retaliation claim. Even though Defendants are correct that Diamond nowhere alleges that she was ever prevented from taking leave for prenatal care, she need not make such an allegation to support a retaliation claim. She alleges that (1) she sought intermittent leave and/or notified her employer that she would be taking maternity leave, and (2) her employer terminated her in retaliation. These allegations suffice.

Third, Defendants argue that Diamond cannot sustain a retaliation claim because she failed to provide a required medical certification and, thus, was not entitled to take FMLA leave in the first instance. It is true that a plaintiff claiming retaliation must allege that "she availed herself of a protected FMLA right." Carrero-Ojeda, 755 F.3d at 719. But "[r]equesting leave is also an FMLA-protected right . . . for which retaliation conceivably could be wrongful even where the leave itself was unprotected." Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 793 (1st Cir. 2011). Diamond clearly alleges that she requested FMLA leave. She notified her employer that she was pregnant, requested to take leave the next day for an OBGYN

appointment, and asked "what [she] need[ed] to provide for FMLA purposes." Doc. No. 1 ¶ 71. She later stated that she intended to go on maternity leave in April of 2025. Id. ¶ 116. Accepting these alleged facts as true as the law requires, Diamond's employer "knew that [Diamond] was engaging in protected activity." Chase v. U.S. Postal Serv., 843 F.3d 553, 560 (1st Cir. 2016). Such notice is a sufficient basis for an FMLA-retaliation claim, regardless of whether Diamond's failure to provide medical certification was ultimately a legitimate reason for the denial of her request. See Brookins v. Staples Contract & Com., Inc., No. 11-cv-11067-RWZ, 2013 WL 500874, at *5 n.11 (D. Mass. Feb. 12, 2013) (rejecting defendant's argument that plaintiff failed first element of FMLA-retaliation claim because she never submitted medical certification).

Fourth and finally, Defendants contend that Grace and Rosenberg are not potentially liable "employers" under the FMLA. For an individual to be considered an "employer" for the purposes of FMLA liability, she must have "had supervisory authority over the plaintiff and [been] partly responsible for the alleged violation." Boadi v. Ctr. for Hum. Dev., Inc., 239 F. Supp. 3d 333, 348 (D. Mass. 2017) (citation modified). The key question is "whether the supervisor exercised sufficient control over the employee." Chacon, 99 F. Supp. 3d at 213 n.5. Courts examine whether the supervisor "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Boadi, 239 F. Supp. 3d at 348 (citation modified). Courts also consider "whether the individual had personal responsibility for making decisions that contributed to the alleged violation." Id. (citation modified).

Diamond plausibly alleges that both Grace and Rosenberg had supervisory authority over her, contributed to the alleged FMLA violation, and participated in the hiring of her replacement.

She alleges that Grace handled "the day to day [sic] operational control of Athena," Doc. No. 1 ¶ 57, had "authority . . . to direct and control Diamond's actions at Athena," id., was involved in the hiring process for the new position that replaced Diamond's prior position, id. ¶ 142, and was involved in communications regarding Diamond's leave request, id. ¶¶ 79, 115–116. Similarly, Diamond alleges that Rosenberg communicated with her multiple times about her termination, id. ¶¶ 140–142, 148–150, discussed the new position with her and invited her to apply, id., and ultimately informed her that she did not get hired for the new position, id. ¶ 153. Accepting these factual allegations as true and drawing all reasonable inferences in Diamond's favor, both Grace and Rosenberg are potentially liable "employers" under the FMLA. Thus, the motion to dismiss the FMLA claim is DENIED.

B. Title VII (Count II)

Count II of the complaint alleges, on behalf of Diamond only, that Defendants engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2. Plaintiffs have conceded that they failed to file suit within the time limits prescribed by Title VII. Doc. No. 41 at 11. The Court accepts this concession. Diamond's Title VII claim is therefore DISMISSED.

C. ERISA (Count III)

In Count III, Diamond asserts an ERISA claim against Santilli. Under ERISA, a plan participant or beneficiary may bring a contractual claim to recover benefits due to her under the plan, 29 U.S.C. § 1132(a)(1), or a statutory claim to obtain equitable relief for other violations of ERISA, such as for a fiduciary's breach of his duties, id. §§ 1132(a)(2), 1109. See, e.g., N.R. by and through S.R. v. Raytheon Co., 24 F.4th 740, 749 (1st Cir. 2022) ("If a fiduciary breaches its duty, ERISA empowers participants and beneficiaries to bring a civil suit for that breach . . . and to seek financial remedies and such other equitable or remedial relief as the court may deem appropriate." (citation modified)). The complaint asserts that Santilli violated ERISA by

converting the monthly premiums that Diamond paid to Athena's employee health insurance plan for his own use, thereby also violating the federal criminal statute on conversion. Doc. No. 1 ¶¶ 228–230 (citing 18 U.S.C. § 664). The complaint does not state whether Diamond brings a contractual or statutory ERISA claim and likewise does not clarify whether Diamond seeks benefits allegedly owed to her under the plan or instead seeks financial remedies or other equitable relief.

To the extent Diamond brings a contractual claim to recover benefits under the plan, she must first exhaust administrative remedies or indicate that doing so would be futile. Madera v. Marsh USA, Inc., 426 F.3d 56, 61–63 (1st Cir. 2005) (holding that employee who was terminated had to exhaust administrative remedies before suing for benefits under plan). The complaint nowhere alleges that Diamond completed the plan's administrative claims process, nor does it allege futility. If, however, Diamond seeks to bring a statutory rather than contractual ERISA claim, exhaustion may not be necessary.[9] But the complaint does not allege that Diamond is bringing such a claim, nor does it state what, if any, equitable relief Diamond seeks. The violation of a criminal statute, including the one cited in Plaintiffs' complaint, is not a basis for an ERISA claim. Accordingly, Diamond's ERISA claim is DISMISSED.

---

[9] The First Circuit has not definitively stated whether the exhaustion requirement applies to statutory claims. Some decisions from district courts in this Circuit have recognized that "'statutory' ERISA claims, as opposed to 'contractual' claims for plan benefits, do not require exhaustion." Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 397, 414 (D. Mass. 2016); see also Molina v. Union Independiente Autentica De La AAA, 555 F. Supp. 2d 284, 302 (D.P.R. 2008) ("[The] exhaustion requirement applies to contract-based ERISA claims; not to purely statutory claims."); United Paperworkers Int'l Union, Loc. 14, AFL-CIO-CLC v. Int'l Paper Co., 777 F. Supp. 1010, 1017 (D. Me. 1991) ("Although some conflict exist among the circuit courts of appeal regarding exhaustion of statutory violations of ERISA, most courts hold that, unlike claims for denial of benefits under ERISA, plaintiffs are not required to exhaust administrative remedies for statutory-based violations.").

D. Massachusetts FEPA (Count IV)

Diamond claims that Athena, Grace, Nugent, Billings, and Rosenberg discriminated against her in violation of the Massachusetts FEPA, Mass. Gen. Laws. ch. 151B. Before bringing a civil action under Chapter 151B, a plaintiff must file a complaint with the MCAD within 300 days of experiencing the alleged discrimination. Id. §§ 5–6; 9. Only "[1] at the expiration of ninety days after the filing of a complaint with the [MCAD], or [2] sooner if a commissioner assents in writing" may the plaintiff "bring a civil action for damages or injunctive relief or both." Id. § 9.

On March 18, 2025, Diamond filed a timely complaint with the MCAD.[10] Doc. No. 28-1 at 1. She did not obtain permission to file suit prior to the expiration of ninety days. Instead, seventy-three days after filing, Diamond requested that her complaint be withdrawn. Doc. No. 28-3. The document she used to make that request had various options the filer, here Diamond, could choose as the reason for dismissal. Diamond left unchecked the box indicating that she "wish[ed] to file a private right of action in civil court." Id. Instead, she checked the box indicating that she "no longer intend[ed] to pursue this matter" at the MCAD. Id. On July 13, 2025—117 days after the filing of Diamond's complaint—the MCAD issued a form order dismissing the complaint because Diamond "no longer wishe[d] to pursue" it. Doc. No. 28-4 at 1. Less than six months later, Plaintiffs filed this civil action. Doc. No. 1.

[10] The complaint alleges that Diamond had an MCAD complaint pending, that the named defendants were served with the MCAD complaint, and that on July 13, 2025, Diamond withdrew the complaint. Doc. No. 1 ¶¶ 176–179. Defendants attach to their memorandum the MCAD filings themselves. Doc. Nos. 28-1, 28-3–28-4. Plaintiffs do not dispute the authenticity of the filings and the filings are central to Plaintiffs' claim. Thus, the Court considers them in its adjudication of the motion to dismiss. See Hall v. FMR Corp., 559 F. Supp. 2d 120, 125 n.7 (D. Mass. 2008) ("The court can consider MCAD filings (the authenticity of which is not in dispute) without converting a motion to dismiss to one for summary judgment.").

A plaintiff such as Diamond must either (1) wait the ninety-day exhaustion period after filing her MCAD complaint before bringing a civil action in court, or (2) obtain permission from the MCAD to bring a court action prior to the expiration of the ninety-day period. Mass. Gen. Laws. ch. 151B, § 9. Absent early permission from the MCAD, the failure to wait ninety days before bringing suit results in dismissal of the subsequent civil case. See Reidy v. Travelers Ins. Co., 928 F. Supp. 98, 107 (D. Mass. 1996) (granting dismissal where plaintiff failed to wait ninety days before filing civil complaint). Defendants contend that because Diamond filed her request to withdraw on the seventy-third day, she failed to wait the required ninety days, and thus, dismissal is required. Doc. No. 28 at 22. The Court disagrees.

The MCAD's regulations do not permit a filer to withdraw or dismiss a claim during the first ninety days without the express permission of the MCAD itself. See 804 Mass. Code Regs. 1.04(12)(b) ("The [MCAD] may grant or deny a request to withdraw within the first 90 days of filing a complaint as the public interest requires."). Only "[a]fter 90 days of filing [a] complaint" may a party "withdraw the complaint as of right for any reason." Id. 1.04(12)(c). Thus, until the MCAD acted on Diamond's request to withdraw, Diamond's complaint remained pending. The MCAD granted her dismissal request on day 117. Diamond satisfied the ninety-day exhaustion period.[11]

[11] Had the MCAD allowed her request on day seventy-four, the outcome might well be different. Defendants have not argued that the dismissal itself carried with it some sort of preclusive effect. Nor could it. There was no adjudication on the merits by the MCAD. Additionally, the ninety-day waiting period serves at least two purposes, both of which are satisfied here: "(1) to provide the MCAD with an opportunity to investigate and conciliate the claim of discrimination; and (2) to provide notice to the defendant of potential liability." Everett v. 357 Corp., 904 N.E.2d 733, 746 (Mass. 2009) (citation modified). Whether Diamond requested withdrawal out of a then-present intention to drop the matter or an intention to proceed to Court, both purposes were satisfied based on the factual allegations in the complaint.

A plaintiff may bring a civil action "as of right after ninety days, if the MCAD has not adjudicated the case by that time." Green v. Wyman-Gordon Co., 664 N.E.2d 808, 812 n.8 (Mass. 1996). The MCAD did not adjudicate Diamond's case within ninety days of the filing of her complaint and so, on day ninety-one, Diamond was entitled to file suit. See Connor v. Mass. Comm'n Against Discrimination, No. 13-P-788, 2014 WL 1042859, at *1 (Mass. App. Ct. March 19, 2014) ("After ninety days, a plaintiff may commence a civil action under § 9 regardless of what the MCAD may or may not have done." (quoting Christo v. Edward G. Boyle Ins. Agency, Inc., 525 N.E.2d 643, 645 n.1 (Mass. 1988))). Diamond filed a timely complaint with the MCAD, the complaint remained pending for over 90 days, and only later did she file a civil action. Diamond complied with Chapter 151B's prerequisites to filing suit.

Defendants' motion to dismiss Diamond's Chapter 151B claim is therefore DENIED.

E. Massachusetts PFMLA (Count V)

Diamond also asserts a claim against Athena, Grace, Nugent, Billings, and Rosenberg for violation of the Massachusetts PFMLA. Taking pregnancy-related leave is a protected right under the PFMLA. See Mass. Gen. Laws ch. 175M, § 2(a)(1) (entitling employee to family leave to bond with child after birth); id. § 2(a)(2) (entitling employee to medical leave relating to "a serious health condition"); 458 Mass. Code Regs. 2.02 (defining "serious health condition" as any condition that involves "continuing treatment by a health care provider," which includes "[a]ny period of incapacity due to pregnancy, or for prenatal care").

As with the FMLA, a plaintiff bringing a claim under the PFMLA may allege that she was terminated in retaliation for exercising her PFMLA rights.[12] Mass. Gen. Laws ch. 175M,

[12] Like the FMLA claim, the Court construes the complaint as bringing a PFMLA claim for retaliation. Diamond alleges that she requested pregnancy-related leave and was subsequently terminated. Thus, "at bottom," she claims that Athena "retaliated against . . . her for having exercised or attempted to exercise [her] rights." Colburn, 429 F.3d at 331.

§ 9(a). Given the recency of the enactment of the PFMLA and the dearth of caselaw on the issue, "Massachusetts courts typically apply the framework used for retaliation claims under the FMLA." Kliskey v. Making Opportunity Count, Inc., 775 F. Supp. 3d 496, 506 (D. Mass. 2025) (citing Corbett v. Mananto Enter., LLC, No. 2280-cv-00153, 2024 WL 3843145, at *10–11 (Mass. Super. Ct. June 5, 2024)). To assert a claim for retaliation, Diamond must therefore allege that "she availed herself of a protected [PFMLA] right." Carrero-Ojeda, 755 F.3d at 719.

Defendants contend that Diamond's PFMLA claim must be dismissed because she fails to allege that she took or intended to take paid leave under the PFMLA. The Court disagrees. Though Diamond did not specifically invoke the PFMLA, she provided notice that she was pregnant, asked "what [she] need[ed] to provide for FMLA purposes," and stated that she intended to take maternity leave. Doc. No. 1 ¶¶ 71, 116. Athena's "FMLA expert" subsequently asked Diamond if she wanted to "use MA Paid Leave" and attached a "flyer for MA PFML to get [Diamond] started on that process." Id. ¶ 85. Furthermore, Diamond received PFMLA leave while at Athena for the birth of her prior child. Id. ¶ 49. Liberally construing the complaint, it is reasonable to infer that (1) Diamond merely failed to differentiate between the FMLA and the PFMLA,[13] and (2) the defendants nevertheless understood that Diamond was requesting leave under both the federal and state statutes.

Defendants cite no caselaw indicating that Diamond must have specifically invoked the PFMLA to sustain a retaliation claim. And the Massachusetts Department of Labor regulations contain no such requirement. See 458 Mass. Code Regs. 2.08(2)(a) (requiring that employee notify their employer of timing of anticipated leave). Furthermore, regulations governing the

---

[13] Indeed, in the complaint, Plaintiffs refer to the PFMLA as the "Massachusetts FMLA." See Doc. No. 1 ¶¶ 252–261.

federal analog provide that employees do "not need to expressly assert rights under the Act or even mention the FMLA" to provide notice of their need for FMLA leave. 29 C.F.R. § 825.301(b); see also Chase, 843 F.3d at 560 ("To be clear, actual knowledge on the part of an employer that a particular employee has specifically invoked the FMLA's statutory protections, as opposed to having taken leave for an injury or other condition which happens to be FMLA-protected, is not the sine qua non of FMLA retaliation liability."). In the absence of authority to the contrary, the Court declines to impose such a requirement here.

Accordingly, Defendants' motion to dismiss Diamond's PFMLA claim is DENIED.

F. Infliction of Emotional Distress (Count VI)

Next, both Diamond and Burton assert claims against Defendants for intentional and/or reckless infliction of emotional distress.[14] Defendants contend that these claims are barred by the Massachusetts Workers' Compensation Act ("WCA"), Mass. Gen. Laws ch. 152, § 24. Under the WCA's exclusivity provision, an employee waives her "right of action . . . in respect to an injury that is compensable under" the WCA "to recover damages for personal injuries" unless she gives her employer "at the time of [her] contract for hire, written notice that [s]he claimed such right." Id. A claim for emotional distress is compensable under the WCA as long as it is "shown to have arisen out of and in the course of employment." Doe v. Purity Supreme, Inc., 664 N.E.2d 815, 818 (Mass. 1996). "Compensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct . . . or the foreseeability of harm." Est. of Moulton v. Puopolo, 5 N.E.3d 908, 914 (Mass. 2014) (citation modified). The Court first considers whether the claims

[14] "The elements of a cause of action for reckless infliction of emotional distress are the same as those for intentional infliction of emotional distress." Bowman v. Heller, 651 N.E.2d 369, 371 n.2 (Mass. 1995). Thus, the Court's "discussion of the latter applies equally to the former cause of action." Id.

against Athena are compensable under the WCA, and then it turns to the claims against the individual defendants.

1. *Athena*

A claim against an employer is compensable under the WCA if it "arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." Case of Hicks, 820 N.E.2d 826, 833 (Mass. App. Ct. 2005) (citation modified). Such claims are barred even when the challenged conduct is illegal, see Doe, 664 N.E.2d at 818–19 (holding that employee's claim for intentional infliction of emotional distress against employer arising out of rape committed manager was barred by WCA), and when the challenged conduct "occur[s] in the course of termination," Hamilton v. Baystate Med. Educ. & Rsch. Found., 866 F. Supp. 51, 56 (D. Mass. 1994), aff'd, No. 94-2211, 1995 WL 561537 (1st Cir. Sep. 20, 1995).

Here, Diamond's claim against Athena arose out of her employment—specifically, as a result of Santilli's alleged conversion of employee health care premiums and the other defendants' termination of Diamond's employment. Thus, her claim is compensable under the WCA. Compensable claims such as this one are barred in the absence of a waiver when hired. Diamond's complaint contains no such allegation. Accordingly, Diamond's emotional-distress claim against Athena is barred by the WCA's exclusivity provision.

Burton's parallel claim against Athena is likewise precluded by the WCA. The WCA specifically provides that, absent the employee's waiver, "the employee's spouse . . . shall also be held to have waived any right . . . against such employer, including . . . claims for damages due to emotional distress." Mass. Gen. Laws ch. 152, § 24; see also Saab v. Mass. CVS Pharmacy, LLC, 896 N.E.2d 615, 618 n.6 (Mass. 2008) (explaining that WCA "extend[s] the

exclusivity provision of § 24 to bar tort and statutory claims brought by family members of an employee injured in a work-related incident").

Thus, both Diamond's and Burton's emotional-distress claims against Athena are DISMISSED.

2. *The individual defendants*

Diamond and Burton also bring claims for intentional and/or reckless infliction of emotional distress against Santilli, Grace, Nugent, Billings, and Rosenberg. The WCA is the exclusive remedy for compensable claims against coemployees as well as against employers. Fredette v. Simpson, 797 N.E.2d 899, 902 (Mass. 2003). Nevertheless, coemployees are not immunized from suit for intentional torts that are "in no way within the scope of employment furthering the interests of the employer." Est. of Moulton, 5 N.E.3d at 920 n.16 (citation modified). "An employee's action is within the scope of his employment when it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." McArdle v. Town of Dracut/Dracut Pub. Sch., 732 F.3d 29, 37 (1st Cir. 2013) (citation modified) (affirming dismissal of claim for intentional infliction of emotional distress against coemployees because underlying acts were within scope of employment).

First, Diamond's and Burton's claims against Grace, Nugent, Billings, and Rosenberg are barred by the WCA. All of the challenged actions of these defendants—including the alleged termination of Diamond's employment and denial of FMLA benefits—"occurred on the job and within the context and the confines of [the] professional relationship." Gregg v. Ne. Univ., 743 F. Supp. 3d 257, 282 (D. Mass. 2024) (citation modified). Likewise, according to the complaint, these actions were in furtherance of Athena's interest. See Doc. No. 1 ¶ 158 (alleging that Defendants "fire[d] Diamond while she was pregnant so she would not burden Athena's

unfunded insurance liabilities with her medical bills regarding her pregnancy"). Thus, the WCA is the exclusive remedy for Diamond and Burton's claims against these defendants.

Second, Diamond's and Burton's claims against Santilli are likewise barred by the WCA. Santilli's challenged conduct took place within the confines of his employment at Athena. According to the complaint, Santilli "converted" employees' health care payments "for his own use and benefit" by using the funds to pay Athena's landlords—real estate holding companies that he owned. Id. ¶¶ 28–30. While paying Athena's landlords may benefit Santilli, it is not so "unrelated to [Athena's] interest" that it falls outside the scope of the WCA. Fredette, 797 N.E.2d at 902 (citation modified). Similarly, Santilli's alleged practice of "underfund[ing] the employee health care pool" and asking providers to resubmit bills was incidental to his employment at Athena. Doc. No. 1 ¶ 65. Athena and others allegedly devised this plan "to allow Athena . . . to not only delay or avoid paying medical claims but also avoid paying [Athena's cofiduciary's] fees." Doc. No. 1-6 ¶ 99. Accepting these allegations as true, the scheme was "motivated, at least in part, by a purpose to serve" Athena's economic interests. McArdle, 732 F.3d at 37. That means the WCA provides the exclusive remedy as to Santilli as well.

Diamond's and Burton's emotional-distress claims against the individual defendants are therefore also DISMISSED.

G. Loss of Consortium (Count VII)

Burton brings a claim for loss of consortium arising out of Diamond's post-partum depression allegedly suffered as a result of Defendants' conduct. The parties dispute whether New Hampshire or Massachusetts law governs this claim. Regardless of which state's law applies, the claim must be dismissed because the underlying tort claim brought by Diamond—intentional and/or reckless infliction of emotional distress—has also been dismissed. See Garcia

v. Steele, 211 N.E.3d 602, 613 n.15 (Mass. 2023) (affirming dismissal of plaintiff's loss-of-consortium claim in light of dismissal of underlying tort claim); Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994) ("As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse's personal injury."); Medeiros v. Town of Rindge, 671 F. Supp. 3d 96, 103 (D.N.H. 2023) (dismissing plaintiffs' loss-of-consortium claim because it was "ancillary to the underlying [tort] claims" that had been dismissed); Guilfoy v. United Servs. Auto. Ass'n, 898 A.2d 502, 504 (N.H. 2006) ("It is well settled that loss of consortium is a consequential damage derivative of the underlying bodily injury claim."). With Diamond's emotional-distress claim eliminated, the complaint contains no surviving tort claims that can be the basis for Burton's alleged loss of consortium. The claim is DISMISSED.

H. Prenatal Injury (Count VIII)

Finally, Baby Boone alleges that Defendants' "discriminatory actions" caused her cardiac injury. Doc. No. 1 ¶ 276. This claim faces a threshold obstacle. Plaintiffs do not have counsel, and neither Diamond nor Burton claim to be lawyers. "[A] pro se party cannot represent people other than him or herself," and "[t]he rule even bars a non-lawyer parent from representing his or her child." Hootstein v. Amherst-Pelham Reg'l Sch. Comm., 361 F. Supp. 3d 94, 101 (D. Mass. 2019) (citing Crippa v. Johnston, No. 91-1676, 1992 WL 245716, at *1 (1st Cir. Oct. 1, 1992) (per curiam)); see also L.R., D. Mass. 83.5.5(b) (providing that individual appearing pro se may not represent another party). Though Diamond and Burton each may proceed without counsel when it comes to their own claims, they may not bring claims on their child's behalf. And Baby Boone is unable to assert any claims without representation by counsel. Accordingly, this claim is DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Doc. No. 27, is ALLOWED in part and DENIED in part as follows. As to Count I (FMLA), Doc. No. ¶¶ 206–217, Count IV (Massachusetts FEPA), id. ¶¶ 231–251, and Count V (Massachusetts PFMLA), id. ¶¶ 252–261, the motion is ALLOWED as to Santilli only and otherwise DENIED. As to Count II (Title VII), id. ¶¶ 218–227, Count III (ERISA), id ¶¶ 229–230, Count VI (intentional and/or reckless infliction of emotional distress), id. ¶¶ 262–270, Count VII (loss of consortium), id. ¶¶ 271–273, and Count VIII (prenatal injury), id. ¶¶ 274–277, the motion is ALLOWED.

Plaintiffs have said they wish to amend their complaint, though they have not identified how they would amend it. Doc. No. 41 at 1–2. That request is DENIED WITHOUT PREJUDICE to Plaintiffs seeking leave to file an amended complaint after initial disclosures and prior to the deadline the Court will set for amendments to the pleadings.[15]

Athena, Grace, Nugent, Billings, and Rosenberg shall answer the complaint, which now only contains Counts I, IV, and V, within fourteen days. The Clerk shall schedule a Rule 16 conference in the ordinary course.

The Court suggests Plaintiffs consider consulting with the Boston College Law School's Federal Pro Se Legal Assistance Program, which provides free information, advice, and limited scope legal assistance to self-represented litigants in the United States District Court for the District of Massachusetts. Additional information regarding the program can be found here:

[15] If Plaintiffs move for leave to file an amended complaint, any such motion shall (1) specifically identify the differences between the original complaint and the proposed amended complaint; (2) explain how the amended complaint cures any defects in the original complaint to the extent that the proposed amendment seeks to replead any dismissed claim; and (3) attach a copy of the proposed amended complaint as an exhibit.

https://www.mad.uscourts.gov/general/pdf/announce/Federal%20Pro%20Se%20Legal%20Assistance%20Clinic.pdf.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge